**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

NOBLE KHAYREE R. LEE-EL, a/k/a Khayree R. Lee, :

Plaintiff, :

v. : Civ. No. 13-464-LPS

DOVER POLICE DEPARTMENT, et al., :

Defendants. :

---

Noble Khayree R. Lee-El, Dover, Delaware, Pro Se Plaintiff.

**MEMORANDUM OPINION**

July 29, 2013
Wilmington, Delaware

**STARK, U.S. District Judge:**

## I. INTRODUCTION

Plaintiff Noble Khayree R. Lee-El ("Plaintiff") resides in Dover, Delaware. He appears *pro se* and has been granted leave to proceed *in forma pauperis*.

## II. BACKGROUND

On February 20, 2013, Plaintiff was arrested for assault after Dover police officers responded to a 911 telephone call. Plaintiff was taken to the Dover Police Department for processing. Approximately eight hours later he was transported to the Justice of the Peace Court for a bail hearing, which Plaintiff alleges was unlawful and fraudulent. Bail was set and Plaintiff was transported to the James T. Vaughn Correctional Center ("VCC") in Smyrna, Delaware.

Plaintiff was represented by an attorney with the Delaware Public Defender's Office. On March 1, 2013, he appeared in court and pled guilty to charges of terroristic threatening and offensive touching. Plaintiff was placed on Level II probation for one year, and required to participate in a domestic violence group and to submit to a psychiatric evaluation. Plaintiff alleges that he "signed the unlawful contract" (i.e., the plea agreement).[1]

On March 2, 2013, Plaintiff was released from the VCC and ordered to report to the Kent County Probation Intake Office within seventy-two hours or face arrest. Plaintiff met with the probation officer and applied for a transfer to Philadelphia, Pennsylvania so that he would no

[1]Plaintiff is a member of the Moorish National Republic and does not believe that he is subject to the jurisdiction of the Delaware State Courts. In addition, there were issues with the way Plaintiff signed documents. Plaintiff insisted on signing documents as "A.R.R. Noble Khayree R. Lee-El UCC 1-207/1-103." He was told to sign the documents without the "A.R.R." or the "UCC 1-207/1-103."

longer be "under the false, fraudulent, and fictitious jurisdiction of Delaware." His request was denied.

Plaintiff demands that Defendants be held accountable and prosecuted to the fullest extent by federal law. He also seeks damages in the amount of one hundred million dollars in silver and gold.

## III. LEGAL STANDARDS

This Court must dismiss, at the earliest practicable time, certain *in forma pauperis* actions that are frivolous, malicious, fail to state a claim, or seek monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. § 1915(e)(2) (*in forma pauperis* actions). The Court must accept all factual allegations in a complaint as true and take them in the light most favorable to a *pro se* plaintiff. *See Erickson v. Pardus*, 551 U.S. 89, 93 (2007); *Phillips v. County of Allegheny*, 515 F.3d 224, 229 (3d Cir. 2008). Because Plaintiff proceeds *pro se*, his pleading is liberally construed and his Complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson*, 551 U.S. at 94 (internal quotation marks omitted).

An action is frivolous if it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Under 28 U.S.C. § 1915(e)(2)(B)(i), a court may dismiss a complaint as frivolous if it is "based on an indisputably meritless legal theory" or a "clearly baseless" or "fantastic or delusional" factual scenario. *Neitzke*, 490 at 327-28; *see also Wilson v. Rackmill*, 878 F.2d 772, 774 (3d Cir. 1989); *Deutsch v. United States*, 67 F.3d 1080, 1091-92 (3d Cir. 1995) (holding frivolous a suit alleging that prison officials took inmate's pen and refused to give it back).

The legal standard for dismissing a complaint for failure to state a claim pursuant to § 1915(e)(2)(B)(ii) is identical to the legal standard used when ruling on Rule 12(b)(6) motions. *See Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999). However, before dismissing a complaint or claims for failure to state a claim upon which relief may be granted pursuant to the screening provisions of 28 U.S.C. § 1915, the Court must grant Plaintiff leave to amend his complaint, unless amendment would be inequitable or futile. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002).

A well-pleaded complaint must contain more than mere labels and conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). When determining whether dismissal is appropriate, the Court conducts a two-part analysis. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). First, the factual and legal elements of a claim are separated. *See id.* The Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. *See id.* at 210-11. The assumption of truth is inapplicable to legal conclusions or to "[t]hreadbare recitals of the elements of a cause of action supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678. Second, the Court must determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." *Fowler*, 578 F.3d at 211. In other words, the complaint must do more than allege the plaintiff's entitlement to relief; rather, it must "show" such an entitlement with its facts. *Id.* A claim is facially plausible when its factual content allows the Court to draw a reasonable inference that the defendant is liable for the misconduct alleged. *See Iqbal*, 556 U.S. at 678. The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Where a complaint pleads facts

that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 570).

## IV. DISCUSSION

### A. Sovereign Immunity

Named as Defendants are the United States Department of Justice and the United States District Court for the District of Columbia. To the extent that Plaintiff attempts to assert a claim against the United States of America and/or the United States Department of Justice and/or the United States District Court for the District of Columbia, sovereign immunity precludes his (*Bivens*[2]) action. See *F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994). The United States cannot be sued without its express consent. *See United States v. Mitchell*, 463 U.S. 206, 212 (1983).

In addition, any tort claim against the United States must be brought under the Federal Tort Claims Act ("FTCA"), which creates a limited waiver of sovereign immunity for injury caused by "the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." 28 U.S.C. § 1346(b)(1). The FTCA limits the Court's jurisdiction by requiring claimants first to file an administrative claim with the relevant agency and receive a written denial of the claim before suit can be filed in federal court. *See* 28 U.S.C. § 2675(a).

---

[2]A civil rights claim against a federal defendant is governed by *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 389 (1971). In *Bivens*, the Supreme Court recognized a federal tort counterpart to the remedy created by 42 U.S.C. § 1983. To state a claim under *Bivens*, a claimant must show: (1) a deprivation of a right secured by the Constitution and laws of the United States; and (2) that the deprivation of the right was caused by an official acting under color of federal law. *See Mahoney v. National Org. For Women,* 681 F.Supp. 129, 132 (D. Conn. 1987) (citing *Flagg Bros., Inc. v. Brooks,* 436 U.S. 149, 155-56 (1978)).

Nothing in the Complaint suggests that Plaintiff has complied with this exhaustion requirement. Therefore, the Court will dismiss the claims against the federal defendants as frivolous and based on immunity from suit pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) and (iii).

**B. Eleventh Amendment**

Plaintiff's claims against the Justice of the Peace Court #7, the VCC, the Delaware Court of Common Pleas for Kent County, Delaware, and the Delaware Bureau of Community Corrections Office of Probation and Parole DO53 are barred by the State's Eleventh Amendment immunity. *See MCI Telecom. Corp. v. Bell Atl. of Pa.*, 271 F.3d 491, 503 (3d Cir. 2001). The Eleventh Amendment of the United States Constitution protects a nonconsenting state or state agency from a suit brought in federal court by one of its own citizens, regardless of the relief sought. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89 (1984); *Edelman v. Jordan*, 415 U.S. 651 (1974). Delaware has not waived its immunity from suit in federal court; although Congress can abrogate a state's sovereign immunity, it did not do so through the enactment of 42 U.S.C. § 1983. *See Brooks-McCollum v. Delaware*, 213 F. App'x 92, 94 (3d Cir. Jan. 11, 2007). In addition, dismissal is proper because the foregoing Defendants are not persons for purposes of § 1983. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71(1989); *Calhoun v. Young*, 288 F. App'x 47 (3d Cir. Aug. 1, 2008).

Therefore, the Court will dismiss the claims against the Justice of the Peace Court #7, the VCC, the Delaware Court of Common Pleas for Kent County, Delaware, and the Delaware Bureau of Community Corrections Office of Probation and Parole DO53, as these Defendants are immune from suit pursuant to 28 U.S.C. § 1915(e)(2)(B)(iii).

C. **Judicial Immunity**

Plaintiff names as a Defendant the Honorable Myron T. Steele, Chief Justice of the Delaware Supreme Court. The Complaint contains no allegation directed towards Chief Justice Steele. Hence, any potential claims fail for lack of personal involvement.

In addition, "[a] judicial officer in the performance of his duties has absolute immunity from suit and will not be liable for his judicial acts." *Capogrosso v. The Supreme Court of New Jersey*, 588 F.3d 180, 184 (3d Cir. 2009) (internal quotation marks omitted). The Complaint contains no allegations that Chief Justice Steele acted outside the scope of his judicial capacity or in the absence of his jurisdiction. *See Mireles v. Waco*, 502 U.S. 9, 11 (1991).

Hence, the claims against Chief Justice Steele will be dismissed as frivolous and based upon his judicial immunity pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) and (iii).

D. **Municipal Liability**

When bringing a § 1983 claim, a plaintiff must allege that some person has deprived him of a federal right, and that the person who caused the deprivation acted under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988). Plaintiff has named the Dover Police Department as a defendant. A plaintiff seeking to recover from a municipality under § 1983 must (1) identify an allegedly unconstitutional policy or custom, (2) demonstrate that the municipality, through its deliberate and culpable conduct, was the "moving force" behind the injury alleged; and (3) demonstrate a direct causal link between the municipal action and the alleged deprivation of federal rights. *See Board of the Cnty. Comm'rs v. Brown,* 520 U.S. 397, 404 (1997). Because the Dover Police Department falls under the umbrella of the City of Dover, for the purposes of screening the Court analyzes the claim as if the Dover Police Department were a municipality.

Plaintiff has not pled that the Dover Police Department was the "moving force" behind any alleged constitutional violation. At most, Plaintiff alleges that members of the Dover Police Department arrested him following their response to a 911 call, falling far short of a constitutional violation. Absent any allegation that a custom or policy established by the Dover Police Department directly caused harm to Plaintiff, his § 1983 claim cannot stand.

Therefore, the claim against the Dover Police Department will be dismissed as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B)(i).

**E. <u>Personal Involvement/Respondeat Superior</u>**

Plaintiff names as defendants the Office of the Governor ("Governor"), the Secretary of State of Delaware ("Secretary of State"), and Delaware Attorney General Joseph R. Biden, III ("Biden"). There are no allegations directed towards these defendants, and it appears that Plaintiff names them based upon their supervisory positions.

"A defendant in a civil rights action must have personal involvement in the alleged wrongs to be liable, and cannot be held responsible for a constitutional violation which he or she neither participated in nor approved." *Baraka v. McGreevey*, 481 F.3d 187, 210 (3d Cir. 2007) (internal quotation marks and citations omitted). "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). In order to establish liability for deprivation of a constitutional right, a party must show personal involvement by each defendant. *See Brito v. United States Dep't of Justice*, 392 F. App'x 11, 14 (3d Cir. Aug. 18, 2010) (citing *Iqbal*, 556 U.S. at 677; *Rode*, 845 F.2d at 1207).

"Because vicarious liability is inapplicable to § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. In *Iqbal*, the Supreme Court emphasized that "[i]n a § 1983 suit – here masters do not answer for the torts of their servants – the term 'supervisory liability' is a misnomer. Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Id.* at 677. "Thus, when a plaintiff sues an official under § 1983 for conduct 'arising from his or her superintendent responsibilities,' the plaintiff must plausibly plead and eventually prove not only that the official's subordinates violated the Constitution, but that the official by virtue of his own conduct and state of mind did so as well." *Dodds v. Richardson*, 614 F.3d 1185, 1198 (10th Cir. 2010). The factors necessary to establish a § 1983 violation will vary with the constitutional provision at issue. *Id.*

Under pre-*Iqbal* Third Circuit precedent, "[t]here are two theories of supervisory liability," one under which supervisors can be liable if they "established and maintained a policy, practice or custom which directly caused [the] constitutional harm," and another under which supervisors can be liable if they "participated in violating plaintiff's rights, directed others to violate them, or, as the person[s] in charge, had knowledge of and acquiesced in [their] subordinates' violations." *Santiago v. Warminster Twp.*, 629 F.3d 121, 129 n.5 (3d Cir. 2010) (internal quotation marks omitted). "Particularly after *Iqbal*, the connection between the supervisor's directions and the constitutional deprivation must be sufficient to demonstrate a plausible nexus or affirmative link between the directions and the specific deprivation of constitutional rights at issue." *Id.* at 130.

The Third Circuit has recognized the potential effect that *Iqbal* might have in altering the standard for supervisory liability in a § 1983 suit but, to date, has declined to decide whether *Iqbal* requires narrowing of the scope of the test. *See Santiago*, 629 F.3d at 130 n.8; *see also Argueta v. United States Immigration and Customs Enforcement*, 643 F.3d 60 (3d Cir. 2011) ("To date, we have refrained from answering the question of whether *Iqbal* eliminated – or at least narrowed the scope of – supervisory liability because it was ultimately unnecessary to do so in order to dispose of the appeal then before us."). Hence, it appears that, under a supervisory theory of liability, and even in light of *Iqbal,* personal involvement by a defendant remains the touchstone for establishing liability for the violation of a plaintiff's constitutional right.[3] *See Williams v. Lackawanna Cnty. Prison*, 2010 WL 1491132, at *5 (M.D. Pa. Apr. 13, 2010).

Facts showing personal involvement of the defendant must be asserted; such assertions may be made through allegations of specific facts showing that a defendant expressly directed the deprivation of a plaintiff's constitutional rights or created such policies under which the subordinates had no discretion but to act in a fashion which actually produced the alleged deprivation; *e.g.*, supervisory liability may attach if the plaintiff asserts facts showing that the supervisor's actions were "the moving force" behind the harm suffered by the plaintiff. *See Sample,* 885 F.2d at 1117-18; *see also Iqbal,* 556 U.S. at 677-87; *City of Canton v. Harris*, 489 U.S. 378 (1989).

[3]"'Supervision' entails, among other things, training, defining expected performance by promulgating rules or otherwise, monitoring adherence to performance standards, and responding to unacceptable performance whether through individualized discipline or further rulemaking." *Sample v. Diecks*, 885 F.2d 1099, 1116 (3d Cir. 1989). "For the purpose of defining the standard for liability of a supervisor under § 1983, the characterization of a particular aspect of supervision is unimportant." *Id.* at 1116-17.

Plaintiff provides no facts describing how the foregoing Defendants allegedly violated his constitutional rights, that they expressly directed the deprivation of his constitutional rights, or that they created policies leaving subordinates no discretion but to act in a fashion which actually produced the alleged deprivation. Nor has Plaintiff alleged facts to support personal involvement by any of the foregoing Defendants. Accordingly, the Court will dismiss as frivolous all claims against the Governor, the Secretary of State, and Biden pursuant to 28 U.S.C. § 1915(e)(2)(B)(i).

**F. Frivolous**

Plaintiff's complaint does not show that he is entitled to relief. Even given the latitude accorded *pro se* pleadings, the filing is so devoid of any possible merit as to be frivolous. Therefore, the complaint will be dismissed as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B)(i).

**G. Criminal Charges**

To the extent that Plaintiff seeks to impose criminal liability upon the Defendants pursuant to the criminal statutes upon which he relies, he lacks standing to proceed. *See Allen v. Administrative Office of Pennsylvania Courts*, 270 F. App'x 149, 150 (3d Cir. Mar. 17, 2008); *United States v. Friedland*, 83 F.3d 1531, 1539 (3d Cir. 1996) ("[T]he United States Attorney is responsible for the prosecution of all criminal cases within his or her district."). The decision whether to prosecute, and what criminal charges to bring, generally rests with the prosecutor. *See United States v. Batchelder*, 442 U.S. 114, 124 (1979). Therefore, the criminal claims will be dismissed as frivolous pursuant to pursuant to 28 U.S.C. § 1915(e)(2)(B)(i).

### H. Habeas Corpus

Finally, to the extent that Plaintiff attempts to challenge his conviction and/or sentence, his sole federal remedy for challenging the fact or duration of his confinement is by way of habeas corpus. *See Preiser v. Rodriguez*, 411 U.S. 475 (1973); *see also Torrence v. Thompson*, 435 F. App'x 56 (3d Cir. June 3, 2011). Plaintiff cannot recover under § 1983 for alleged wrongful incarceration or sentence unless he proves that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus. *See Heck v. Humphrey*, 512 U.S. 477, 487 (1994).

Here, Plaintiff has neither alleged nor proven that his conviction or sentence was reversed or invalidated as provided by *Heck*.

## V. CONCLUSION

For the above reasons, the Court will dismiss the Complaint as frivolous and/or based on the immunity of Defendants, pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) and (iii). The Court finds amendment is futile.

An appropriate Order follows.